Filed 8/6/26  Maldonado v. Sully III AVH CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MADELINE MALDONADO,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SULLY III AVH LLC,<br><br>Defendant and Respondent. | B346464<br><br>(Los Angeles County Super. Ct. No. 24STCV28516) |

APPEAL from an order of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Appeal dismissed.

ORIGINAL PROCEEDING in mandate.  Petition granted.

Wilshire Law Firm, John G. Yslas, William M. Pao, Edward E. Kim and Matthew R. Baker for Plaintiff and Appellant.

Callahan, Thompson, Sherman & Caudill, Robert W. Thompson and Tina Hopper for Defendant and Respondent.

_____

Madeline Maldonado (Maldonado) filed a wage and hour action against her employer, Sully III AVH LLC (Sully), asserting both class and individual claims. The trial court granted Sully's motion to compel arbitration of Maldonado's individual claims. The court also dismissed Maldonado's class claims without prejudice and stayed the action. Maldonado appeals from the court's order.

We exercise our discretion to treat this appeal as a petition for writ of mandate. We find that the arbitration agreement is unconscionable, and that the trial court erred in granting the motion to compel arbitration. We order the court to vacate its order of April 21, 2025, and issue a new order denying the motion.

## BACKGROUND

### I. The Arbitration Agreement

Maldonado was a non-exempt employee of Sully, a car dealership doing business as Honda Lancaster, from approximately June 2021 to August 2024. As part of her onboarding process, Maldonado signed an arbitration agreement (agreement). She "agree[d] to pursue any claims [she] might have against the Company that currently exist or that may arise in the future exclusively through binding arbitration[,]" including "any and all claims which arise out of the employment context or

2

any other interaction/relationship we had, have or may have in the future."

The agreement has no expiration. Instead, the agreement states: "It is further agreed and understood that any agreement contrary to the foregoing must be entered into, in writing, by both the Owner(s) and/or President of the Company and [Maldonado]. Oral promises shall not serve to modify and/or cancel this agreement."

Finally, the agreement requires Maldonado to arbitrate "all claims [she] bring[s] against the Company (and any third-party beneficiaries) . . . ." "Third-party beneficiaries" are broadly defined as including "the Company's owners, directors, officers, managers, employees, agents, partners, attorneys, sister-companies, subsidiaries, parent companies, joint-venturers, affiliated persons/entities, independent contractors, and parties affiliated with its employee benefit and health plans."

## II. Motion to Compel Arbitration

Maldonado filed a wage and hour class action complaint against Sully in October 2024. Sully moved to compel arbitration based upon the agreement, dismiss the class claims, and stay the action (motion to compel arbitration or motion). Maldonado opposed the motion, arguing that the agreement was both procedurally and substantively unconscionable and could not be saved by severing the unconscionable provisions. Among other things, Maldonado argued that there was substantive unconscionability because the agreement included all claims, regardless of whether they originated from her employment, and was of infinite duration.

Following a hearing, the trial court granted the motion to compel arbitration on April 21, 2025. The court also dismissed

3

the class claims without prejudice and stayed the action pending arbitration.

## III. Appeal

Maldonado filed a notice of appeal in May 2025. Then, in July 2025, she filed a representative action under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).

## DISCUSSION

## I. Legal Standard

"A written agreement to submit a controversy to arbitration is valid and enforceable, absent a reason under state law, such as unconscionability, that would render any contract revocable. [Citations.]" (*Cook v. University of Southern California* (2024) 102 Cal.App.5th 312, 319–320 (*Cook*).)

" '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the

4

term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

## II. Appealability

As an initial matter, the parties dispute whether this is an appealable order. An order granting a motion to compel arbitration "generally is not immediately appealable. [Citations.]" (*Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 943 (*Nixon*).) However, Maldonado argues that because the trial court dismissed the class action claims, there is an exception under the "death knell" doctrine. The doctrine provides that an order dismissing a class action suit is immediately appealable, because it amounts to a de facto final judgment for the absent class members. (*Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630, 634.)

Sully argues that the doctrine does not apply because the claims were dismissed without prejudice, though the case Sully cites—*Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 585–586—is distinguishable. That case involved an order denying a motion for class certification, and as a different panel of this division noted, "the remaining plaintiffs [we]re free to move for class certification again." (*Id.* at p. 586.) Sully also argues that the "death knell" doctrine does not apply because Maldonado filed a representative PAGA action.

We need not resolve this dispute because we exercise our discretion to dismiss the appeal and treat it as a petition for writ of mandate.[1] "An appellate court has discretion to treat a

---

[1] Concurrent with its respondent's brief, Sully filed a motion to dismiss Maldonado's appeal. In light of our treatment of the appeal, we deny Sully's motion to dismiss as moot.

purported appeal from a nonappealable order as a petition for writ of mandate, but that power should be exercised only in unusual circumstances. [Citation.]" (*H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1366–1367.) "[W]rit review of orders compelling arbitration is proper . . . (1) if the matters ordered arbitrated fall clearly outside the scope of the arbitration agreement or (2) if the arbitration would appear to be unduly time consuming or expensive. [Citations.]" (*Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 160 (*Zembsch*).)

We find that Maldonado has satisfied this standard and that writ review is warranted. (See *Vela v. Harbor Rail Services of California, Inc.* (2026) 120 Cal.App.5th 353, 362 [treating appeal from order compelling arbitration as a petition for writ of mandate where "[r]eview of the order . . . [wa]s based on the same grounds as the order dismissing and striking the class claims, [and] w[ould] not cause any additional delay or subvert the purpose of the arbitration statute"]; *Nixon, supra*, 67 Cal.App.5th at p. 944.)

## III. Waiver

Sully also argues that Maldonado waived her appeal because she participated in the court-ordered arbitration. We disagree. In this context, waiver is a voluntary relinquishment of a known right. (See *Desert Regional Medical Center, Inc. v. Miller* (2022) 87 Cal.App.5th 295, 315.) Maldonado did not consent to arbitration, so there has been no waiver.

## IV. Unconscionability

"In a mandate proceeding challenging an order compelling arbitration, we decide the issue of enforceability of the arbitration clause de novo. [Citation.]" (*Zembsch, supra*, 146 Cal.App.4th at p. 162; see also *Ramirez v. Charter Communications, Inc.* (2024)

16 Cal.5th 478, 493 (*Ramirez*) ["Appellate review of an order regarding an arbitration agreement's validity is de novo if the evidence is not in conflict and the ruling is based entirely on an interpretation of law"].)

We agree with Maldonado and our sister courts that an arbitration agreement like this one is unconscionable. (See *Phan v. Knight Sacramento SU Inc.* (2026) 121 Cal.App.5th 641, 653– 659 (*Phan*); *Stoker v. Blue Origin, LLC* (2026) 120 Cal.App.5th 91, 105–111 (*Stoker*); *Cook, supra,* 102 Cal.App.5th at pp. 321– 328.) There is procedural unconscionability because the trial court found that the agreement was "a condition of employment[.]" An adhesion contract, like the agreement here, is "subject to scrutiny because [it is] 'not the result of freedom or equality of bargaining.' [Citation.] However, [it] remain[s] valid and enforceable unless the resisting party can also show that one or more of the contract's terms is substantively unconscionable or otherwise invalid." (*Ramirez, supra*, 16 Cal.5th at pp. 492–493.)

We find that a high degree of substantive unconscionability exists here for three reasons. First, the scope of the agreement is broad. It covers "any and all claims which arise out of the employment context or any other interaction/relationship we had, have or may have in the future." This means, for example, that after her employment ceased, Maldonado could purchase a vehicle from Sully and would be compelled to arbitrate any lemon law claim stemming from the condition of the vehicle or any slip-and-fall claim stemming from her visit to the dealership.

Second, the agreement is of infinite duration. The agreement applies to claims the parties "may have in the future," and survives in perpetuity unless Sully agrees to cancel the agreement in writing.

7

Finally, there is a lack of mutuality in claims covered by the agreement.  It requires Maldonado to arbitrate any and all claims she may have against Sully and "third-party beneficiaries," which includes not only Sully's owners, officers, and employees, but also outsiders like "joint-venturers, affiliated persons/entities, independent contractors, and parties affiliated with [Sully's] employee benefit and health plans."  At the same time, the agreement does not require any of these third-party beneficiaries to arbitrate their claims against Maldonado.

The combined effect of the procedural unconscionability and substantive unconscionability satisfies "the overall test of unconscionability."  (*Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 250; see also *Phan, supra*, 121 Cal.App.5th at pp. 653–659; *Stoker, supra*, 120 Cal.App.5th at pp. 104–112; *Cook, supra*, 102 Cal.App.5th at pp. 321–328.)

## V.  Severance

" 'An unconscionable contractual term may be severed and the resulting agreement enforced, unless the agreement is permeated by an unlawful purpose, or severance would require a court to augment the agreement with additional terms. [Citation.]'  Severance may be properly denied when the agreement contains more than one unconscionable provision, and ' "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." [Citation.]' [Citation.]" (*Cook, supra*, 102 Cal.App.5th at pp. 328–329.)

Here, we cannot sever the offending provisions.  Rather, we would have to substantively rewrite the arbitration agreement to contradict its plain language and add an expiration date or event. "[T]he central purpose of the Agreement was to require

8

[Maldonado] to arbitrate all [past, present, and future] claims against [Sully] and its third parties, whether related to employment or not." (*Phan, supra*, 121 Cal.App.5th at p. 659.) Because the unconscionability permeates the entire agreement, severance is not an option. (See *Ramirez, supra*, 16 Cal.5th at p. 516; *Cook, supra*, 102 Cal.App.5th at p. 330.)

## V. The Federal Arbitration Act

Finally, Sully argues that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) "applies and preempts the state law decision in *Cook* as it is hostile to arbitration and in contravention of generally applicable contract principles."

The FAA preempts state legislation that would restrict the enforcement of arbitration agreements. (*Armendariz, supra*, 24 Cal.4th at p. 98.) The FAA does not preclude the court from finding that an arbitration agreement is unconscionable. (*Id.* at pp. 98–99.) Essentially, Sully argues that no arbitration agreement governed by the FAA could ever be found unconscionable. We reject this proposition as meritless on its face.

## DISPOSITION

The appeal is dismissed. Deeming the appeal a petition for writ of mandate, the petition is granted. The trial court is directed to (1) vacate its order of April 21, 2025, and (2) enter a new order denying Sully's motion to compel arbitration. Each

side is to bear its own costs on appeal and in connection with this writ proceeding.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

GOORVITCH, J.

We concur:

LUI, P. J.

RICHARDSON, J.